ORIGINAL CV 12 - 483

## IN THE UNITED STATES DISTRICT COURT
**FILED**

## FOR THE EASTERN DISTRICT OF NEW YORK
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB - 1 2012

BROOKLYN OFFICE

BIANCO, J.

SUMMONS ISSUED

|  |  |
|---|---|
| ENTREPRENEUR MEDIA, INC., | Civil Action No. |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| MITCHELL SCHLIMER and MAGIC WAND CREATIONS, LLC, | |
| Defendants. | |

Plaintiff Entrepreneur Media, Inc. ("EMI"), for its Complaint against Mitchell Schlimer and Magic Wand Creations, LLC ("Defendants"), alleges as follows:

### JURISDICTION AND VENUE

1. This is a civil action alleging trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a); and New York common law trademark infringement and unfair competition.

2. Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over EMI's claims for relief for violation of the federal trademark and unfair competition statutes. Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over EMI's state law unfair competition claims, in that the claims are joined with substantial and related claims under the Lanham Act. This Court also has supplemental jurisdiction over EMI's state law claims pursuant to 28 U.S.C. § 1367(a), in that all of EMI's claims arise out of a common nucleus of operative facts.

3. This Court has personal jurisdiction over Defendants because Defendants reside and maintain offices in this State.

SD\827458.1

4.      Venue in this Court exists under 28 U.S.C. § 1391(b)(1) as Defendants reside in this District.

## PARTIES

5.      EMI is a California corporation, having its principal place of business at 2445 McCabe Way, Irvine, California 92614.

6.      On information and belief, Mitchell Schlimer is an individual who resides in Glen Cove, New York.  On information and belief, Schlimer was personally aware of, and authorized, approved, ratified, participated in, and instigated the wrongful conduct alleged in this Complaint.

7.      On information and belief, Magic Wand Creations, LLC ("Magic Wand") is a Georgia limited liability company.  On information and belief, Schlimer is an officer and/or member of Magic Wand.  Magic Wand is the listed owner of the federal trademark application for the mark ENTREPRENEUR HALL OF FAME, and maintains a website at *theehalloffame.com*, which states that it is located at 58 Harwood Dr East, Glen Cove, New York 11542.

8.      EMI is informed and believes, and on that basis alleges, that each of the Defendants was the agent and employee of the remaining Defendants and, at all times mentioned, acted within the course and scope of such agency and employment.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### EMI and Its Successful ENTREPRENEUR® Brand

9.      For over 30 years, EMI (together with its predecessor companies) has published magazines and books which provide editorial content and other information, as well as offer products and services related or of interest to businesses, business owners, and prospective

business owners.

10.     EMI's longstanding marketing and sales efforts have been conducted primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR® Mark").

11.     EMI is the publisher of ENTREPRENEUR® magazine and other publications incorporating the ENTREPRENEUR® name in their titles.  ENTREPRENEUR® magazine is published monthly with a current paid circulation, including both subscriptions and newsstand sales, of more than 600,000 in the United States.  ENTREPRENEUR® magazine is also sold and distributed in over 100 foreign countries.

12.     ENTREPRENEUR® magazine routinely features articles and interviews of some of the biggest names in the entrepreneur community, including Richard Branson, skateboarding icon Tony Hawk, quarterback Drew Brees, and hip hop mogul Russell Simmons:

   

13.     ENTREPRENEUR® magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EMI's top-secret formula:

   

14.     EMI also publishes over 200 book titles under the ENTREPRENEUR® name
and ENTREPRENEUR PRESS® imprint:

  

15.     EMI has recently launched many of its most successful titles as e-books:



Start Your Own Child-        Start Your Own Clothing       Start Your Own Retail
Care Service (3rd Ed.)       Store and More (3rd Ed.)      Business and More

EMI also conducts seminars, workshops and other educational services geared towards

how to successfully start and operate businesses.  These events have included:  the Sales

Success Secrets/Business Success Secrets® Breakfasts sponsored by State Farm

Insurance; the Women in Charge Conferences sponsored by OPEN—American Express;

the Business Success Secrets® Breakfast Seminars sponsored by Deluxe Corporation

and Sprint; the Winning Strategies for Business Conference sponsored by Verizon; and

Entrepreneur® Magazine's Growth 2.0 Conferences presented by The UPS Store®:



16.     EMI operates a number of websites to further disseminate and market its content

and services, including *entrepreneur.com*, *econnect.entrepreneur.com*,

*EntrepreneurEnEspanol.com*, *YoungEntrepreneur.com*, and *EntrepreneurPress.com*:

17.     The website at *entrepreneur.com* has averaged over 6 million unique visitors and

over 60 million page views per month, and is ranked in the top 1,000 sites in the United States

by Alexa.

18.     EMI has also launched apps for iPhones/ iPads, Android and Blackberry:



19.     EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding relationships have included:  The UPS Store® (an annual contest and awards ceremony for selecting and promoting top established entrepreneurs, emerging entrepreneurs, and college entrepreneurs), MSNBC, Reuters, PerfectBusiness.com, Princeton Review (ranking top entrepreneurial schools), Great Place to Work® (annual Best Small & Medium Workplaces rankings), and Palo Alto Software (Entrepreneur® magazine's Business Plan Pro® software):



20.     Through careful cultivation of its various products and services, EMI has developed an outstanding reputation as an innovator in the field of business start-up and strategy and has established an extremely loyal customer following.

21.     EMI has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR® brand.  Through EMI's widespread and continuous use of the ENTREPRENEUR® Mark, the mark has acquired

extensive goodwill, has developed a high degree of distinctiveness, and has become famous, well known and recognized as identifying goods and services that originate from EMI.

22.     The fame and quality of the products and services bearing the ENTREPRENEUR® Mark have been widely recognized through industry awards and commendations.  ENTREPRENEUR® magazine was a finalist in two categories in Folio's 2011 Eddie & Ozzie magazine editorial and design awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious Maggie awards in 2008, 2009 and 2011 from the Western Publishing Association.  EMI's website at *entrepreneur.com* has been recognized in 2007 as having the Best Publishing Website by the Web Marketing Association, and its Entrepreneur Connect site was voted the #1 social network for entrepreneurs by Mashable.com. EMI has also received multiple Integrated Marketing Awards from Min Online for its magazine and website.  In addition, both ENTREPRENEUR® magazine and the *entrepreneur.com* website have been named to BtoB magazine's 2010 and 2011 lists of the top 50 media outlets for business-to-business advertising.

## EMI's Intellectual Property Rights

23.     EMI owns, and has obtained United States federal registrations for, the ENTREPRENEUR® Mark, as well as a family of related marks incorporating the term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely magazines, books and published reports pertaining to business opportunities | 1,453,968<br>August 25, 1987<br>First Use in Commerce:<br>May 2, 1978 |

| ENTREPRENEUR | 35: Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers and; web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 First Use in Commerce: July 1992 |
|---|---|---|
| ENTREPRENEUR | 35: Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely the start-up and operation of small business enterprises 41: Educational services, namely, conducting seminars on the development and operation of businesses, and conducting work shops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning and insurance | 2,502,032 October 30, 2001 First Use in Commerce: Oct. 18, 1991 |
| ENTREPRENEUR.COM | 9: Downloadable podcasts in the field of business, current events, lifestyle issues, and developments in science and technology 35: Providing business information and advice via a web site on a global computer network 38: Broadcasting programs via a global computer network; and streaming of audio and video material via the Internet; telecommunications services, namely, transmission of podcasts | 3,519,022 October 21, 2008 First Use in Commerce: Sept. 2002 |
| ENTREPRENEUR CONNECT | 42: Online business networking services in the nature of creating and hosting a community for registered users to create professional profiles, to participate in group discussions, to make business contacts, and to upload onto the website materials promoting their businesses, products and services | 3,652,950 July 14, 2009 First Use in Commerce: April 26, 2008 |
| ENTREPRENEUR ENESPANOL.COM | 35: Advertising and business services, namely, arranging for the promotion of goods and services of others by means of a global computer network and other computer online service providers; providing business information for the use of customers in the field of starting and operating businesses and permitting customers to obtain information via a global computer network and other computer online service providers; internet advertising services, namely, promoting the goods and services of others by providing a web site with active links to their websites featuring their goods and services | 3,266,532 July 17, 2007 First Use in Commerce: Oct. 13, 2006 |

| ENTREPRENEUR'S STARTUPS | 16: Paper goods and printed matter; namely, magazines, books, booklets and published reports pertaining to business opportunities | 3,204,899 February 6, 2007 First Use in Commerce: Jan. 27, 2006 |
|---|---|---|
| ENTREPRENEUR PRESS | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public <br><br> 35: On-line ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to the subjects of starting, running and operating a business and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses and members of the general public | 3,470,064 July 22, 2008 First Use in Commerce: April 1999 |

24.     The above marks are collectively referred to as the "EMI Marks." The above registrations are collectively referred to as the "EMI Registrations."

25.     EMI's registration numbers 1,453,968, 2,263,883, and 2,502,032 for ENTREPRENEUR® are incontestable pursuant to 15 U.S.C. § 1065.

26.     The EMI Registrations constitute prima facie evidence that the marks are valid, and that EMI is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

27.     EMI also has extensive common law rights in the ENTREPRENEUR® Mark, based on its use of that mark over the last three decades.

28.     Through extensive use, marketing, branding and promotion, the ENTREPRENEUR® Mark is well-known and famous, enjoying substantial recognition, goodwill and association with EMI. The public distinguishes EMI's goods and services from

those of other publishers and providers of educational services on the basis of the

ENTREPRENEUR® Mark. The ENTREPRENEUR® Mark is distinctive and has acquired

secondary meaning in the United States.

29.    The U.S. District Court for the Central District of California held that:

- "The extensive advertising and public recognition over the past 25 years

have established [the ENTREPRENEUR® Mark] as a strong mark in the industry."

- The ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of

significant protection."

- The ENTREPRENEUR® Mark "has acquired secondary meaning."

*Entrepreneur Media, Inc. v. Smith*, No. CV 98-3607 FMC (CTx), 2004 U.S. Dist. LEXIS

24078, at *9-10, 13 (C.D. Cal. June 23, 2004).

30.    The Ninth Circuit reviewed the District Court's findings and affirmed them on

appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. Appx. 212, 2004 U.S. App. LEXIS 11567

(9th Cir. 2004).

31.    Recently both a Magistrate Judge and District Court judge in the Eastern District

of Virginia found the ENTREPRENEUR® Mark to be distinctive. *Entrepreneur Media, Inc. v.*

*seattleentrepreneur.com*, No. 1:11-cv-00409-LMB-JFA, Docket No. 22 (E.D. Va. Dec. 6,

2011).

## **Defendants and Their Unauthorized Use of the EMI Marks**

32.    Defendants claim to provide educational services and recognition of excellence in

the field of entrepreneurship on a website entitled ENTREPRENEUR HALL OF FAME &

MUSEUM at *www.theehalloffame.com*. Currently, the website contains biographies of

"inductees," entrepreneur-related news, and a link for visitors to contribute donations to the

construction and marketing of a physical hall of fame to be built at a future date. The banner at the top of Defendants' website appears as follows:



33.     Defendants have filed a federal trademark application (Serial No. 77/544203 filed August 11, 2008) for the mark ENTREPRENEUR HALL OF FAME in Class 41 for "educational services, namely, providing incentives to individual entrepreneurs to demonstrate excellence in the field of business achievements and enhancing the learning environment for entrepreneurs; providing recognition and incentives by the way of awards to demonstrate excellence in the field of business achievements and entrepreneurship," claiming a first use in commerce date of November 1997 (the "EHOF Application"). EMI has opposed this application.

34.     Defendants have also applied for the following federal registrations for marks similar to the ENTREPRENEUR HALL OF FAME mark (collectively, the "Ancillary EHOF Applications"):

•     INTERNATIONAL ENTREPRENEUR HALL OF FAME & MUSEUM in Class 41 (Serial No. 85/000617, filed March 29, 2010);

•     NATIONAL ENTREPRENEUR HALL OF FAME & MUSEUM in Class 41 (Serial No. 85/001043, filed March 29, 2010); and

•     ENTREPRENEUR HALL OF FAME & MUSEUM in Class 41 (Serial No. 85/254917, filed March 1, 2011).

35.     Given EMI's renown, online presence, and its long history of providing articles, profiles and recognition for entrepreneurs via ENTREPRENEUR® magazine, the *entrepreneur.com* website, seminars and other educational events, and awards and ceremonies

for outstanding entrepreneurs, EMI is very concerned that consumers will be confused into believing that Defendants and their site are endorsed by or affiliated with EMI. This potential for confusion is heightened by Defendants' choice of red as the distinguishing color for the "Entrepreneur" portion of their name, which is the same color used by EMI for its primary branding. Defendants will thus enjoy the benefits of EMI's reputation and goodwill based on this consumer confusion, to EMI's detriment.

## EMI is Being Harmed By Defendants'

## Continuing Infringement and Unlawful Conduct

36.     Defendants' continued use of the ENTREPRENEUR HALL OF FAME mark in commerce in violation of EMI's valuable intellectual property rights in the EMI Marks is knowing, intentional and willful, and is causing damage to EMI.

37.     Due to Defendants' willful continuing infringement and unlawful conduct, EMI is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights. EMI had to retain counsel and incur substantial fees and costs (and continues to incur those fees and costs) to prosecute this suit and pursue its claims.

38.     Defendants' activities have caused and will cause irreparable harm to EMI for which it has no adequate remedy at law because Defendants' conduct interferes with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high quality products, as well as dilute the substantial value of EMI's name and trademarks.

39.     EMI's interest in protecting its intellectual property rights, and products and services from customer confusion outweigh any harm to Defendants. The public interest is best served by granting the requested relief to EMI against Defendants in this cause.

## FIRST CLAIM FOR RELIEF

### Lanham Act - Federal Trademark Infringement - 15 U.S.C. § 1114

40.    EMI incorporates by reference the factual allegations set forth above.

41.    EMI owns the EMI Marks and the EMI Registrations. The trademarks reflected in the EMI Registrations are strong and distinctive, designating EMI as the source of all products and services advertised, marketed, sold or used in connection with the EMI Marks.  In particular, the ENTREPRENEUR® Mark has been used for over 30 years, and has been recognized by federal district courts in both the Fourth and Ninth Circuits as a strong and distinctive mark.

42.    EMI is the senior user of the EMI Marks, as it began use of the marks in interstate commerce prior to Defendants' purported first use of the name ENTREPRENEUR HALL OF FAME.

43.    Defendants do not have authorization, license or permission from EMI to market and sell their services under the EMI Marks or the ENTREPRENEUR® Mark, which are confusingly similar to the ENTREPRENEUR HALL OF FAME mark and closely related to the particular products and services with which the EMI Marks and the ENTREPRENEUR® Mark have come to be associated.

44.    Defendants were aware of the EMI Marks and the ENTREPRENEUR® Mark, as they were on constructive notice based on EMI's longstanding federal registrations.  Thus Defendants' unauthorized use of a mark confusingly similar to the EMI Marks was knowing, intentional and willful.

45.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

46.     Defendants' actions thus constitute trademark infringement.

47.     Unless an injunction is issued enjoining any continuing or future use of the

ENTREPRENEUR HALL OF FAME mark by Defendants, such continuing or future use is

likely to continue to cause confusion, mistake, or to deceive as to source, origin, affiliation or

sponsorship, and thereby to damage EMI irreparably.

48.     Defendants' activities have caused and will cause irreparable harm to EMI for

which it has no adequate remedy at law, in that:  (i) the EMI Marks and the

ENTREPRENEUR® Mark comprise unique and valuable property rights that have no readily

determinable market value; (ii) Defendants' infringement constitutes interference with EMI's

goodwill and customer relationships and will substantially harm EMI's reputation as a source of

high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages

resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to

15 U.S.C. § 1116(a).

49.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order:  (a) requiring

Defendants to account to EMI for any and all profits derived by Defendants from their actions,

to be increased in accordance with the applicable provisions of law; and (b) awarding all

damages sustained by EMI caused by Defendants' conduct.

50.     Defendants' conduct was intentional and without foundation in law, and

pursuant to 15 U.S.C. § 1117(a), EMI is as a result entitled to an award of treble damages

against Defendants.

51.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and

EMI is thus entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

## Lanham Act - Unfair Competition and False Designation of Origin - 15 U.S.C. § 1125(a)

52.     EMI incorporates by reference the factual allegations set forth above.

53.     The EMI Marks, and in particular the ENTREPRENEUR® Mark, are strong and distinctive, designating EMI as the source of all goods and services advertised, marketed, sold or used in connection with those marks.  In addition, by virtue of EMI's decades-long use of the ENTREPRENEUR® Mark in connection with its products and services, and its extensive marketing, advertising, promotion and sale of its products and services under that mark, the EMI Marks, and in particular the ENTREPRENEUR® Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of New York and throughout the United States, associates the EMI Marks with a single source of products and services.

54.     EMI is the senior user of the EMI Marks, as it began use of the marks in interstate commerce prior to Defendants' purported first use of the name ENTREPRENEUR HALL OF FAME.

55.     Defendants were aware of the EMI Marks and the ENTREPRENEUR® Mark, as they were on constructive notice based on EMI's longstanding federal registrations.

56.     On information and belief, through their use of the confusingly similar ENTREPRENEUR HALL OF FAME mark, Defendants intended to, and did in fact, confuse and mislead consumers, and did misrepresent and create the false impression that EMI somehow authorized, originated, sponsored, approved, licensed or participated in Defendants' activities.

57.     In fact, there is no connection, association or licensing relationship between EMI and Defendants, nor has EMI ever authorized, licensed or given permission to Defendants to

use the EMI Marks in any manner whatsoever.

58.    On information and belief, Defendants' use of the ENTREPRENEUR HALL OF
FAME mark is likely to cause confusion as to the origin and authenticity of Defendants'
website and related products/services and is likely to cause others to believe that there is a
relationship between Defendants and EMI.

59.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been
and will continue to be damaged.

60.    Defendants' actions thus constitute false designation of origin and unfair
competition.

61.    Defendants' activities have caused and will cause irreparable harm to EMI, for
which it has no adequate remedy at law, in that: (i) the EMI Marks including the
ENTREPRENEUR® Mark comprise unique and valuable property rights that have no readily
determinable market value; (ii) Defendants' infringement constitutes interference with EMI's
goodwill and customer relationships and will substantially harm EMI's reputation as a source of
high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages
resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to
15 U.S.C. § 1116(a).

62.    Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order:  (a) requiring
Defendants to account to EMI for any and all profits derived by Defendants from their actions,
to be increased in accordance with the applicable provisions of law; and (b) awarding all
damages sustained by EMI caused by Defendants' conduct.

63.    Defendants' conduct was intentional and without foundation in law, and
pursuant to 15 U.S.C. § 1117(a), EMI is as a result entitled to an award of treble damages

against Defendants.

64.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and EMI is thus entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

### Dilution Under N.Y. Gen. Bus. § 360-l

65.     EMI incorporates by reference the factual allegations set forth above.

66.     As determined by two federal courts, EMI's ENTREPRENEUR® Mark is distinctive and has acquired secondary meaning.  This mark is capable of being diluted.

67.     Defendants' use of the name ENTREPRENEUR HALL OF FAME is likely to dilute the distinctive quality of EMI's ENTREPRENEUR® Mark, and therefore violates N.Y. Gen. Bus. § 360-l.

68.     EMI is accordingly entitled to injunctive relief.  Unless an injunction is issued enjoining Defendants' diluting conduct, EMI will continue to be damaged irreparably.  EMI has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, EMI prays for the following relief:

A.     An injunction ordering Defendants, and their affiliates, officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of the injunction order by personal or other service, to:

1.     Cease all use and never use the ENTREPRENEUR HALL OF FAME mark or related marks, the EMI Marks, or any other mark likely to cause confusion with or dilute the EMI Marks, in connection with the promotion, advertising, offering for sale, or sale, of any

products or services;

        2.     Never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided or sold by Defendants are in any manner associated or connected with EMI, or are licensed, approved or authorized in any way by EMI;

        3.     Never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of their goods or services, are related to, authorized or sponsored by EMI;

        4.     Never register any domain name that contains any of the EMI Marks, or any domain name which is confusingly similar to any of the EMI Marks; and

        5.     Withdraw the EHOF Application and each of the Ancillary EHOF Applications, and never again apply for, or seek to register, the ENTREPRENEUR HALL OF FAME mark, the marks that are the subject of the Ancillary EHOF Applications, or any mark that is likely to cause confusion with any of the EMI Marks.

        B.     An order pursuant to 15 U.S.C. § 1116(a) directing Defendants to file with the Court and serve upon EMI's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

        C.     An order finding that, by the acts complained of above, Defendants have infringed EMI's federally registered trademarks in violation of 15 U.S.C. § 1114.

        D.     An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association, in violation of 15 U.S.C.

§ 1125(a).

E.       An order finding that, by the acts complained of above, Defendants have diluted the EMI Marks in violation of N.Y. Gen. Bus. § 360-1.

F.       An order pursuant to 15 U.S.C. § 1117(a) compelling Defendants to account to EMI for any and all profits derived by them from their unlawful and infringing conduct.

G.       Pursuant to 15 U.S.C. § 1117(a), an order awarding EMI damages for EMI's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages.

H.       An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding EMI its reasonable attorneys' fees.

I.       An order awarding EMI all of its costs, disbursements and other expenses incurred due to Defendants' unlawful conduct, pursuant to 15 U.S.C. § 1117(a).

J.       An order awarding EMI pre-judgment interest.

K.       An order awarding EMI such other relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, EMI demands a trial by jury.

Dated: February 1, 2012                    By: _Clement Naples_

                                        Clement Naples
                                        LATHAM & WATKINS LLP
                                        *clement.naples@lw.com*
                                        885 Third Avenue
                                        New York, New York 10022-4834
                                        (212) 906-1200 / (212) 751-4864 Fax

                                        Attorneys for Plaintiff
                                        ENTREPRENEUR MEDIA, INC.

Of Counsel:
Perry J. Viscounty
LATHAM & WATKINS LLP

*perry.viscounty@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California  92626-1925
(714) 540-1235 / (714) 755-8290 Fax

Jennifer L. Barry
LATHAM & WATKINS LLP
*jennifer.barry@lw.com*
600 West Broadway, Suite 1800
San Diego, California  92101-3375
(619) 236-1234 / (619) 696-7419 Fax

Attorneys for Plaintiff
ENTREPRENEUR MEDIA, INC.